J-S92014-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF: THE ADOPTION OF G.T., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: A.T., NATURAL FATHER | |
| | No. 941 WDA 2016 |

Appeal from the Decree May 27, 2016
In the Court of Common Pleas of Erie County
Orphans' Court at No(s): 97 In Adoption 2015

BEFORE:  SHOGAN, MOULTON, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED JANUARY 24, 2017**

Appellant, A.T. ("Father"), appeals from the decree entered on May 27, 2016, in the Erie County Court of Common Pleas that terminated his parental rights to his minor son, G.T. ("Child"), born in March 2008. Appellant's counsel has filed a petition to withdraw representation and a brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), and ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009), which govern withdrawal from representation on direct appeal.[1]  Appellant has not filed a *pro se* response to counsel's petition to withdraw.  Following our review, we

---

[*]  Retired Senior Judge assigned to the Superior Court.

[1]  This Court extended the ***Anders*** principles to appeals involving the termination of parental rights in ***In re V.E.***, 611 A.2d 1267, 1275 (Pa. Super. 1992).

grant counsel's petition to withdraw and affirm the decree terminating Father's parental rights.

After the entry of the decree terminating Father's parental rights on May 27, 2016, Father filed a timely appeal.[2] Contained within Father's notice of appeal was a statement of counsel's intention to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967).[3] *See In the Interest of J.T.*, 983 A.2d 771, 772 (Pa. Super. 2009) (applying *Anders* procedure and Pa.R.A.P. 1925(c)(4) to appeals involving the termination of parental rights). On September 2, 2016, counsel filed an *Anders* brief, and on September 6, 2016, counsel filed a petition to withdraw followed by an amended petition on September 26, 2016.

By letter dated July 13, 2016, the orphans' court informed this Court that it would not draft an opinion because counsel sought to withdraw. Letter, 7/13/16. Due to the permanency of an order involuntarily terminating parental rights, and because the orphans' court's rationale for termination under 23 Pa.C.S. § 2511(a)(1), (2), and (b) could not be

---

[2] Father's notice of appeal was due by June 26, 2016, which fell on a Sunday. Father's notice, filed the next day on June 27, 2016, therefore was timely filed. 1 Pa.C.S. § 1908 (when thirtieth day of appeal period falls on a Saturday or Sunday, those days are excluded from computation).

[3] *Anders* sets forth the requirements for counsel to withdraw from representation on direct appeal. *See also Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).

ascertained in the notes of testimony,[4] we remanded to the orphans' court for a thorough opinion on December 16, 2016.[5] The orphans' court has diligently and timely complied, and this matter is now ready for disposition.

The orphans' court explained the procedural history as follows:

> G.T. was born [i]n March [of] 2008. *Amended Petition for Involuntary Termination of Parental Rights, 12/7/15, ¶3*. On September 26, 2008, a custody order was entered in Crawford County, Pennsylvania, giving the mother and the Appellant shared [legal] custody of G.T. The mother retained primary physical custody of G.T. and the Appellant was granted periods of visitation with G.T. by the parties' mutual consent. If the parties could make no such agreement, the order stated Appellant was entitled to visitation on Mondays and Wednesdays from one until four p.m., Thursdays from one until six p.m. and on Sunday from twelve noon until six p.m. each week. *See Petitioner's Exhibit A*.
>
> On December 7, 2015, the mother filed a petition for involuntary termination of parental rights. Appellant received appointed counsel and a termination hearing was held on May 27, 2016.
>
> Appellant's parental rights were terminated by Decree that same day. Appellant filed a timely Notice of Appeal and Statement of Intent to File an *Anders* brief June 27, 2016.

Trial Court Opinion, 12/29/16, at 1–2.

Before we address the questions raised on appeal, we first must resolve appellate counsel's request to withdraw. ***Commonwealth v. Cartrette***, 83 A.3d 1030 (Pa. Super. 2013) (*en banc*). ***See***

_____

[4] N.T., 5/27/16, at 84–85.

[5] We note that the filing of a statement of intent to withdraw as counsel pursuant to ***Anders*** and Pa.R.A.P.1925(c)(4) does not relieve the orphans' court of its duty to provide the rationale for its decision under Pa.R.A.P. 1925(a)(2).

*Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) (stating, "When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw.").

There are procedural and briefing requirements imposed upon an attorney who seeks to withdraw on appeal. The procedural mandates are that counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the brief to [his client]; and 3) advise [his client] that he or she has the right to retain private counsel or raise additional arguments that the [client] deems worthy of the court's attention.

*Cartrette*, 83 A.3d at 1032 (citation omitted).

In addition, our Supreme Court, in *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009), stated that an *Anders* brief must:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;
>
> (3) set forth counsel's conclusion that the appeal is frivolous; and
>
> (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. The Supreme Court reaffirmed the principle that indigents "generally have a right to counsel on a first appeal, [but] . . . this right does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing such an appeal." *Santiago*, 978 A.2d at 357 (citation omitted). The Court stated:

> In the Court's view, this distinction gave meaning to the Court's long-standing emphasis on an indigent appellant's right to "advocacy." . . . As the Court put it, "although an indigent whose appeal is frivolous has no right to have an advocate make his case to the appellate court, such an indigent does, in all cases, have the right to have an attorney, zealous for the indigent's interests, evaluate his case and attempt to discern nonfrivolous arguments."

*Santiago*, 978 A.2d at 357–358 (citation omitted).

Father's counsel has complied with the first prong of *Santiago* by providing a summary of the procedural history and facts in the *Anders* brief. She has complied with the second prong by referring to any evidence in the record that she believes arguably supports the appeal. Counsel also set forth her conclusion that the appeal is frivolous and stated her reasons for that conclusion, with appropriate support. Moreover, counsel filed a separate motion to withdraw as counsel, wherein she stated that she examined the record and concluded that the appeal is frivolous. Further, counsel has attempted to identify and fully develop any issues in support of Father's appeal. Additionally, counsel sent a letter to Father, and she attached a copy of the letter to her motion. Counsel states that she informed Father that she has filed a motion to withdraw and an *Anders*

brief, and she apprised Father of his rights in light of the motion to withdraw as counsel. Thus, Father's appellate counsel has satisfied the requirements of **Anders** and **Santiago**. We thus conclude that the procedural and briefing requirements for withdrawal have been met.

In the **Anders** brief, counsel presents the following issues for our review:

> 1. Whether the orphans' court erred and/or abused its discretion when it concluded that sufficient grounds were estab[l]ished for termination pursuant to 23 Pa.C.S.A. §2511(a)(1)?
>
> 2. Whether the orphans' court erred and/or abused its discretion when it concluded that sufficient grounds were established for termination pursuant to 23 Pa.C.S.A. §2511(a)(2)?
>
> 3. Whether the orphans' court erred and/or abused its discretion when it concluded that termination of A.T.'s parental rights was in [C]hild's best interests pursuant to 23 Pa.C.S.A. §2511(B)?

**Anders** Brief at 4.

We address whether the orphans' court erred in granting the termination petition because the evidence was insufficient to support the termination. In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

> [A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. **In re: R.J.T.**, 608 Pa. 9, 9 A.3d 1179, 1190 (Pa. 2010). If the factual findings are

- 6 -

supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. ***Id.***; ***In re R.I.S.***, 614 Pa. 275, 36 A.3d 567, 572 (Pa. 2011) (plurality). As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. ***Id.***; ***see also Samuel-Bassett v. Kia Motors America, Inc.***, 613 Pa. 371, 455, 34 A.3d 1, 51 (Pa. 2011); ***Christianson v. Ely***, 575 Pa. 647, 838 A.2d 630, 634 (Pa. 2003). Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. ***Id.***

As we discussed in ***R.J.T.***, there are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. ***R.J.T.***, 9 A.3d at 1190. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion. ***In re Adoption of Atencio***, 539 Pa. 161, 165, 650 A.2d 1064, 1066 (Pa. 1994).

***In re I.E.P.***, 87 A.3d 340, 343–344 (Pa. Super. 2014) (quoting ***In re Adoption of S.P.***, 47 A.3d 817, 826–827 (Pa. 2012)).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that the "standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of

the truth of the precise facts in issue.'" *Id*. (quoting *In re J.L.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). Moreover, this Court may affirm the trial court's decision regarding the termination of parental rights with regard to any one subsection of section 2511(a). *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

The orphans' court terminated Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), and (b). Order, 5/27/16, at 1. Section 2511(a)(1), (2), and (b) provide as follows:

**§ 2511. Grounds for involuntary termination**

(a) General rule.--The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

(1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

(b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant

to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511. This Court has explained that the focus in terminating parental rights under section 2511(a) is on the parent, but under section 2511(b), the focus is on the child. ***In re Adoption of C.L.G.***, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*).

The orphans' court has provided a thorough evaluation supporting termination of Father's parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2) and (b). We have reviewed the notes of testimony and conclude that the orphans' court's findings and conclusions are supported by the testimony of record, and we adopt the orphans' court opinion as our own.[6] Moreover, after conducting an independent review of the record, we discern no non-frivolous issues overlooked by counsel. Accordingly, we grant counsel's motion to withdraw.

Decree affirmed. Motion to withdraw as counsel granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

---

[6] The parties are directed to attach a copy of the orphans' court's opinion of December 29, 2016, to any future filings in this matter.

- 9 -

Date: <u>1/24/2017</u>

IN THE MATTER OF       :      IN THE COURT OF COMMON PLEAS
THE ADOPTION OF        :      OF ERIE COUNTY, PENNSYLVANIA
G███ T██████        :      ORPHANS' COURT
                               :      DOCKET NO. 97 IN ADOPTION 2015

## 1925(a) OPINION

On May 27, 2016, a decree was entered terminating the parental rights of the natural father, A███ T████ (Appellant), to his minor child, G███ T████ (G.T.). He filed a timely Notice of Appeal and Statement of Intent to File an Anders Brief. A review of the record shows the natural mother, K██ T██████(mother), met her burden in establishing grounds for termination under 23 Pa. C.S.A. §2511(a)(1), (a)(2), and (b). It is therefore respectfully requested the Superior Court affirm the Decree.

## BACKGROUND

### *Procedural History*

G.T. was born on March ██ 2008. *Amended Petition for Involuntary Termination of Parental Rights, 12/7/15, ¶3.* On September 26, 2008, a custody order was entered in Crawford County, Pennsylvania, giving the mother and the Appellant shared custody of G.T. The mother retained primary physical custody of G.T. and the Appellant was granted periods of visitation with G.T. by the parties' mutual consent. If the parties could make no such agreement, the order stated Appellant was entitled to visitation on Mondays and Wednesdays from one until four p.m., Thursdays from one until six p.m. and on Sunday from twelve noon until six p.m. each week. *See Petitioner's Exhibit A.*

On December 7, 2015, the mother filed a petition for involuntary termination of parental rights. Appellant received appointed counsel and a termination hearing was held on May 27, 2016.

1



FILED
DEC 29 2016
Register of Wills

Appellant's parental rights were terminated by Decree that same day. Appellant filed a timely Notice of Appeal and Statement of Intent to File an *Anders* brief June 27, 2016.

The trial court submitted a letter notifying the Superior Court its intent to rest on the record, and of its intent not to submit a 1925(a) Opinion. By Judgment Order dated December 16, 2016, the Superior Court remanded this matter to the orphans'/trial court for the preparation of a 1925(a) opinion within thirty (30) days.

### Facts

The testimony at the termination hearing revealed the following:

Shortly after G.T. was born, Appellant and mother obtained a formal custody order in Crawford County, Pennsylvania. At that time, mother and Appellant were not living together. Mother characterized Appellant's involvement with G.T. as "very sporadic." *Involuntary Termination Proceedings Transcript, 5/27/16, p. 5-6.*

After the custody order was entered, mother still characterized Appellant's involvement as "sporadic." She described instances in which Appellant cancelled his visits and would become upset about having to come to her home to visit the child. Nevertheless, Appellant visited mother's home for the better part of the first year of the child's life. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 7.*

In 2009, mother testified Appellant still remained sporadically involved in the child's life. She stated Appellant saw the child about two times a month. During some of these visits, Appellant took G.T. to his mother's home, or, would remain at her home with the child. Appellant attended G.T.'s preschool graduation. As of 2009, Appellant had a good, working relationship with the mother, which continued for some time. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 7-8.*

2

Mother testified that in 2013 her working relationship with Appellant deteriorated. Mother learned Appellant became involved with the criminal justice system and was criminally charged. She also learned Appellant struggled with drug addiction. After these events, Appellant did not have contact with mother and G.T. for a period of at least eight months, even though Appellant lived down the street from mother and child. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 8.* Eventually, mother learned Appellant was arrested in Tennessee, and was being extradited back to Pennsylvania. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 9.*

Appellant was released from the Crawford County Jail around Thanksgiving or Christmas, 2014. At that time, mother and her new husband invited Appellant to their home in an attempt to work on Appellant's relationship with the child and "promote him to be a good father." *Involuntary Termination Proceedings Transcript, 5/27/16, p. 9.*

Communication between mother and Appellant further deteriorated in March, 2015. Appellant attended a birthday party mother and her husband gave G.T., but did not bring a present for the child. The next month, Appellant contacted the mother asking to spend time with G.T. over Easter. However, G.T. told Appellant he would rather go to Florida to see his grandmother with the rest of the family. Mother testified she heard Appellant screaming at the child through the phone, saying "I don't care that you want to go see your grandma, you're coming to my house whether you like it or not." *Involuntary Termination Proceedings Transcript, 5/27/16, p. 10-11.* Mother testified G.T. became so upset he started "bawling." *Involuntary Termination Proceedings Transcript, 5/27/16, p. 17.* When mother took the phone away from the child, Appellant continued to yell at her, until mother's husband took the phone from her. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 17-18, 33.*

3

Since the argument at Easter, 2015, Appellant did not contact mother or attempt to exercise any rights under the existing custody order until September, 2015, when he sent a text message to mother asking why he hadn't seen his son. Around this time, mother's attorney served Appellant with a post-adoption letter, indicating mother wished to move forward with termination of Appellant's parental rights. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 11-12.*

After April, 2015, Appellant did not contact the child at any holiday. The child continued to do well in school and in his extracurricular sports activities. Appellant did not attend any of the child's school or sports activities for at least two years, and did not at any time inquire as to the child's progress in school. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 13.* He never appeared for a parent/teacher conference or the child's medical appointments. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 22.*

Prior to April, 2015, mother and husband picked up Appellant and transported him to one of the child's football games, but Appellant made no effort to continue his involvement on his own. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 22.*

Mother denied telling Appellant at any time to stay away from the child or otherwise prohibit contact between Appellant and child. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 17, 78.* Mother also testified her phone number stayed the same, she updated the Appellant with new addresses when relevant, and did not receive any cards, presents, or information from any family member Appellant tried to contact her. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 16-17, 20.* At no time did mother file anything in Crawford County to modify the standing custody order. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 80.*

4

Mother described the ways in which Appellant's minimal contact and incarceration took a great emotional toll on G.T. Mother testified to an instance in which someone on the child's school bus told G.T. his father was in jail. Mother stated G.T. understood what it meant to be in prison and had a lot of anxiety about it. G.T. currently sees a doctor every three months for medication and was in individual therapy twice a week at one point. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 24-26.* Appellant never participated in or inquired as to G.T.'s progress in therapy. *Involuntary Termination Proceedings transcript, 5/27/16, p. 28.*

The child frequently asks when mother's husband will become his father and when his last name will be the same as his. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 83.*

Appellant's testimony did little to support his belief his parental rights to the child should not be terminated. At the time of the hearing, Appellant was incarcerated in the Erie County Prison on charges of Possession With Intent to Deliver heroin, a theft offense, and endangering the welfare of a child. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 47.* He knew a custody order was in place to allow him regular visitation with his son since 2008, yet never exercised his right to enforce the order, despite his assertions mother kept him from seeing the child. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 40, 45.* Though Appellant denied an ongoing problem with drug addiction, he admitted being ordered into drug and alcohol treatment in conjunction with a prior conviction. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 49-50.* Most recently, Appellant attended treatment for drug addiction, but did not do so until after the termination petition was filed in December, 2015. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 76-77.*

5

Appellant admitted he had no contact with the child since April, 2015, and blamed this on the mother telling him a court order existed prohibiting him from seeing the child. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 53-54.* However, mother never prevented Appellant from attending the child's sporting events, asking about his progress in school, or further inquiring as to the child's health and well-being, as Appellant insisted he participated in over the years. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 57, 69-70.* Even when he did see the child, it was only two or three weekends and an occasional Wednesday per month at best. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 64.*

Appellant testified he tried to keep in contact with mother to see G.T., but mother refused. However, Appellant never returned to Crawford County, or petitioned for custody and/or modification in any other court in Pennsylvania, though he already had knowledge of the custody process. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 72.*

At the close of testimony, a finding was made on the record determining the mother's testimony was more credible than the Appellant's. An order was entered terminating Appellant's parental rights under 23 Pa.C.S.A. §2511 (a)(1), (a)(2), and (b). This timely appeal followed.

## ISSUE PRESENTED

After review of the record, the only issue of possible arguable merit that could be raised on appeal is one challenging the sufficiency of the evidence supporting the trial court's findings under subsections (a)(1), (a)(2), and (b).

## STANDARD OF REVIEW

In reviewing an appeal from an order terminating parental rights,

> Appellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for parental rights. [The] standard of review requires an appellate court to accept the findings of fact and credibility

6

determinations of the trial court if they are supported by the record. *In re: R.J.T.,*
*608 Pa. 9, 9 A.3d 1179, 1190 (2010).*

> If the factual findings are supported, appellate courts review to determine if the
> trial court made an error of law or abused its discretion. *Id.* An abuse of
> discretion does not result merely because the reviewing court might have reached
> a different conclusion. *Id.* Instead, a decision may be reversed for an abuse of
> discretion only upon determination of manifest unreasonableness, partiality,
> prejudice, bias, or ill-will.

## DISCUSSION

In a termination of parental rights hearing, the initial focus is on the conduct of the
parent. The party moving for termination must "prove by clear and convincing evidence that the
parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a)."
*In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007).* Once these statutory grounds exist, the court
may analyze whether it is in the best interests of the child for parental rights to be terminated. *Id.*

One major aspect of this analysis includes the "nature and status of the emotional bond
between parent and child, with close attention paid to the effect on the child of permanently
severing any such bond." *Id.* The Superior Court may affirm the trial court's decision regarding
the termination of parental rights with regard to any one subsection of 23 Pa.C.S.A. §2511(a). *In
re B.L.W., 843 A.2d 380, 384 (Pa. Super. 2004)(en banc), app. den. 863 A.2d 1141 (2004).*

Preserving Appellant's parental rights is not an acceptable option in this case. "Parental
duty requires that the parent act affirmatively with good faith interest and effort, and not yield to
every problem, in order to maintain the parent-child relationship to the best of his or her ability,
even in difficult circumstances." *In re B.N.M., 856 A.2d 847, 855 (Pa. Super. 2004).* "A parent
must utilize all available resources to preserve the parental relationship, and must exercise
reasonable firmness in resisting obstacles placed in the path of maintaining the parent-child
relationship." *Id.*

7

While Appellant was somewhat involved in the child's life shortly after his birth, the mother's credible testimony indicated Appellant never had more than sporadic contact with the child and failed to perform any meaningful parental duties on the child's behalf. Despite Appellant's assertions mother kept the child from him, it was clear to the trial court the mother made every effort to keep the Appellant in the child's life, even inviting him to dinner at her home and providing transportation for him to and from the child's sporting events. *Involuntary Termination Proceedings Transcript, May 27, 2016, p. 9, 22.*

Despite mother's assistance, Appellant had no steady, meaningful presence in the child's life. Though a custody order was entered in 2008 giving Appellant regular visitation with the child, Appellant did not see the child more than a few times per month at best, and never petitioned for modification or enforcement of the order despite his claims mother withheld the child from him. He did not regularly attend medical appointments or school conferences for the child, nor did he regularly send gifts, cards, or letters to the child for holidays or his birthday. Mother testified the last time Appellant had contact with the child was in March, 2015, over one year before the termination proceedings. *Involuntary Termination Proceedings Transcript, May 27, 2016, p. 5, 7-8, 13, 22, 28, 53-54, 84-85.*

Furthermore, the child has significant issues with anxiety, which stem from the Appellant's minimal presence in his life and frequent incarceration. The child, at one point, was involved with therapy to address these issues. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 24-26.* The testimony indicated the child is bonded with mother and her husband and is looking forward to the day when mother's husband can finally become his "father." *Involuntary Termination Proceedings Transcript, 5/27/16, p. 83.*

8

Appellant's testimony did little to support the position his parental rights should not be terminated. He offered no explanation as to why he did not file for custody modification or contempt in any court in Pennsylvania if he felt mother was keeping the child from him, nor could he offer a credible explanation as to why he did not have contact with the child for at least a year leading up to the termination hearing. Appellant's incarceration on new charges demonstrated his inability or refusal to conform his conduct the requirements of the law and provide for his child's needs. *Involuntary Termination Proceedings Transcript, 5/27/16, p. 40, 45, 47.*

## CONCLUSION

Appellant demonstrated his unwillingness to put forth effort in maintaining a relationship with his child. He barely exercised his rights under the current custody order, or failed to spend time with the child at all, to the child's detriment. Appellant's involvement with the criminal justice system is additional evidence of his settled purpose to relinquish his parental rights. Given the lack of bond Appellant and child share, it is in the child's best interests Appellant's rights be terminated. It is respectfully requested the Superior Court affirm the decree terminating the Appellant's parental rights to the children.

Dated this 29th day of December, 2016

BY THE COURT:

_____ J.

ROBERT A. SAMBROAK, JR.

cc:    Patrick Kelley, Esquire
2503 West 26th Street
Erie, PA 16506

9